8 N.J. Super. 455 (1950)
73 A.2d 281
FRANK SICKINGER, TRUSTEE IN BANKRUPTCY OF NATHAN TIGER, PLAINTIFF,
v.
HEYMAN ZIMEL AND HARRY GOLDSTEIN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 21, 1950.
*456 Mr. Samuel Black, attorney for plaintiff.
Messrs. Morrison, Lloyd & Griggs, John W. Griggs, II, appearing, attorneys for defendants.
GRIMSHAW, J.S.C.
The trustee in bankruptcy of Nathan Tiger sues to set aside a chattel mortgage given by Tiger and his wife to the defendants. The mortgage is challenged upon the ground that the affidavit of consideration is false in fact and that, as a consequence, the mortgage is void under the provisions of N.J.S.A. 46:28-5.
The facts are not in substantial dispute. Mainly, the controversy is concerned with the conclusions to be drawn from the facts.
In 1947 plaintiff, Tiger, and one Irving Krause engaged in the business of selling food at retail under the name of Fairlawn Food Center. The venture was not too successful. The income was insufficient to support both parties. They considered selling the business and with that end in view consulted the defendant, Goldstein, who describes himself as a business broker. Goldstein's efforts to effect a sale were unsuccessful. Then Tiger decided to try operating the business alone. Krause was anxious to withdraw and was willing to surrender to Tiger his share of the business in return for a partial payment in cash, the balance to be secured by a mortgage. Tiger asked Goldstein if a loan could be secured so that he, Tiger, could make a payment to Krause, settle with his creditors and have some cash left for the business. *457 Goldstein was optimistic about the loan but said that Tiger would have to pay for it. To this, Tiger agreed.
In the latter part of June or early July, 1948, according to the testimony of Tiger and Krause, Goldstein took them to the office of the defendant, Zimel. Mr. Zimel told Tiger that he could arrange a loan of $9,000 for which Tiger would be required to pay a bonus of $900. After some discussion and possibly another visit to the office of Mr. Zimel, a closing date was set for the afternoon of July 21st. Attending the closing were Tiger, Krause, Zimel, Goldstein and a Mr. Boyer, attorney for Krause.
Zimel denied having met either Tiger or Krause prior to July 21st. He testified that Goldstein had consulted him as an attorney, and requested that Zimel draw the necessary documents. Zimel had prepared papers transferring the store from Krause to Tiger. Zimel also drew a chattel mortgage in the sum of $9,000 covering the store and contents. The mortgage, dated July 21, 1948, ran from Tiger and his wife to the defendants, Zimel and Goldstein, as mortgagees. Mr. Zimel's explanation of his appearance as a mortgagee was that unaided, Goldstein was unable to raise $9,000. Mr. Zimel said that he joined merely to lend the support of his credit to the enterprise and to accommodate Goldstein. I think Mr. Zimel underestimated his own importance, as the testimony shows him to have been the dominant figure in the transaction.
In any event, the closing took place as scheduled. The various papers were signed by Tiger and he and Goldstein then took the mortgage to Fairlawn to be signed by Mrs. Tiger. Upon their return to the office of Mr. Zimel, he drew a check to the order of the Tigers for $9,000 and handed it to Tiger. Tiger endorsed it and handed it back to Zimel, who wrote "Cashed" across its face and returned it to his file. The check was never presented for payment. Obviously, it was never intended that the check would be cashed. Mr. Zimel did not surrender control of it. And his bank account then, and for some time thereafter, did not contain sufficient funds from which the check could have been met.
*458 There is conflict in the testimony concerning the endorsement of the check. Tiger and Krause say that Tiger endorsed his own name and also the name of his wife on the check. Zimel and Goldstein testified that the check was taken with the mortgage to Fairlawn by Goldstein and Tiger and endorsed by Mrs. Tiger. The point is of no importance since it is clear that at no time did Zimel or Goldstein surrender control of the check.
After the mortgage was signed Tiger received from Zimel a check for $2,000 dated July 22, 1948, and cash in the sum of $352.27. Krause received a check for $3,000 dated July 26, 1948.
The next day, July 22nd, the mortgage was assigned to the Second National Bank as collateral security for a note of $8,100 executed by Zimel and Goldstein and dated July 22nd. The proceeds of the note were paid into the account of Mr. Zimel, who then issued a certified check in the amount of $1,915.91 to one of Tiger's creditors. And, finally, on July 26th, Tiger received a further payment of $731.82. At the same time Zimel credited himself with $100 as a counsel fee. These payments, which may be said to have been made to Tiger or for his benefit and which extended over the period from July 21st to July 26th, totaled $8,100.
The defendants explain the $900 difference between the payments of $8,100 and the $9,000 mortgage by saying that the $900 was a brokerage fee owed to Goldstein in connection with the sale of the property. Defendants do not explain why Goldstein should be entitled to a brokerage fee when his efforts to sell met with failure. The transaction between the parties was a loan. The transfer of title was incidental to the loan. Goldstein, after first testifying that the $900 represented a commission, finally admitted that it was the charge for obtaining the loan. This, of course, was the true situation.
Defendants produced an unsigned carbon copy of a document dated July 22, 1948, in the form of a receipt from Goldstein to Tiger and the Fairlawn Food Center in which Goldstein acknowledged payment of $900 "in full of commission *459 for the sale of Fairlawn Food Center, Inc., to Nathan and Jean Tiger." The original of this document was not produced and Tiger denied having received it. Even if the receipt was signed and delivered, of which fact I am not satisfied, it simply constituted a self-serving characterization of what occurred. Like the $9,000 check, it is an attempt to invest the transaction with an aura of legality.
Defendants' account of the payment of the $900 to Goldstein is worthy of comment, though not of consideration. The bank advanced only $8,100 to the defendants. Then Goldstein, according to their story, gave Zimel a check for $900 to make up the difference between $8,100 and $9,000. Why this was done they don't say, since Zimel at no time paid out $9,000. Zimel then returned the $900 check to Goldstein as payment of his brokerage fee. Of course, Goldstein's check was not produced.
Omitting the formal parts, the affidavit annexed to the chattel mortgage reads as follows:
"Heyman Zimel and Harry Goldstein, the mortgagees in the foregoing mortgage named, being duly sworn on their oaths say that the true consideration of said mortgage is as follows, viz.: a cash loan in the sum of Nine Thousand ($9,000.00) Dollars made by deponents to the mortgagors the date of these presents, evidenced by a series of twenty six (26) promissory notes payable in consecutive months as more particularly set forth in the body of this mortgage, the said loan being made to enable the mortgagors to purchase the chattels in question from Fair Lawn Food Center, Inc., and constituting part of the purchase price thereof and deponent further says that there is due and to grow due on said mortgage the sum of Nine Thousand ($9,000.00) Dollars besides lawful interest thereon from the 21st day of July, 1948."
The affidavit, signed by both defendants, is dated July 21st, 1948, as is the mortgage. The affidavit is false. The total amount advanced is untruthfully stated to be $9,000 when, in fact, it was $8,100. Nor was that sum all advanced on July 21st. According to the evidence the payments were as follows: $352.27 on July 21st; $3,915.91 on July 22nd and $3,831.82 on July 26th. The difference of $900 between the *460 $8,100 actually advanced and the $9,000 stated in the affidavit was, in my opinion, a bonus exacted by the defendants as the price for granting the loan.
The statement of consideration being untrue, the affidavit is fatally defective and the mortgage will be set aside. Kauffman v. Utility Trucking Co., 120 N.J. Eq. 576 (E. & A. 1936); DeYoe v. Harper Brothers, Inc., 121 N.J. Eq. 599 (E. & A. 1937); Adelman v. Ulshofer, 123 N.J.L. 417 (Sup. Ct. 1939). The mortgage is a fraud upon the creditors of Tiger and the defendants are trustees for them. Having sold the property in violation of the trust, the defendants will be held liable for the value of the property or its proceeds and must account therefor. Bigel v. Brandtjen & Kluge, Inc., 129 N.J. Eq. 537 (Ch. 1941); affirmed with modification, 131 N.J. Eq. 119; Arnesto Paint Co. v. Brush, 117 N.J. Eq. 368 (Ch. 1934).
Judgment accordingly.